IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RICHARD A. MILLER, SR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:05CV01045 |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF HOUSING AND URBAN | ) | |
| DEVELOPMENT; DRUCKER & FALK, | ) | |
| LLC; THETFORD PROPERTIES III, | ) | |
| Limited Partnership; THETFORD | ) | |
| PROPERTY MANAGEMENT, INC., | ) | |
| d/b/a Beaumont Avenue Apartments; | ) | |
| RICHARD A. URBAN, individually and | ) | |
| as General Partner of Thetford | ) | |
| Property Management Inc.; JAMES | ) | |
| K. ROBERSON, individually and as | ) | |
| Chief Judge of Alamance County; | ) | |
| DIANE A. PICKETT, individually and | ) | |
| as Clerk of Court of Alamance County | ) | |
| WILLIAM K. BROWNLEE, individually | ) | |
| and as Counsel for Thetford Property | ) | |
| Management, Inc.; and TAMMY | ) | |
| EGGLESTON, individually and as | ) | |
| Property Manager of Beaumont | ) | |
| Avenue Apartments, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

TILLEY, Chief Judge

This suit arises from a summary ejectment proceeding in state court.

Plaintiff Richard A. Miller, Sr. brings several claims against the Defendants as a

result of this proceeding. This case is now before the Court on the following

motions: (1) Plaintiff's Motion for Preliminary Injunction [Doc. #5]; (2) Defendant Terry Johnson's Motion to Dismiss [Doc #14]; (3) Plaintiff's Motion for Defendant to Bear Costs for the Service of Summons [Doc. #20]; (4) Defendants Roberson and Pickett's Motion to Dismiss [Doc. #22]; (5) Defendant United States Department of Housing and Urban Development's Motion to Dismiss, or in the alternative, Motion for Summary Judgment [Doc. #26]; (6) Defendant Tammy Eggleston's Motion to Set Aside Default Judgment [Doc. #38]; and (7) Defendant Tammy Eggleston's Amended Motion to Dismiss [Doc. #43].

For the reasons set forth below, (1) Defendants Sheriff Johnson, Judge Roberson, Clerk of Court Pickett, and HUD's Motions to Dismiss [Docs. #14, 22 & 26] will be GRANTED; (2) Defendant Eggleston's Motion to Set Aside Entry of Default [Doc. #38] and Amended Motion to Dismiss [Doc. #43] will be GRANTED; and (3) Plaintiff's Motion for Preliminary Injunction [Doc. #5] and Motion for Defendants to Bear Costs [Doc. #20] will be DENIED.

I.

The facts in the light most favorable to the Plaintiff are as follows: Plaintiff Miller was a tenant of the Beaumont Avenue Apartments, located in Burlington, North Carolina. The Beaumont Avenue Apartments are a housing facility which is federally subsidized by the United States Department of Housing & Urban Development ("HUD") under Section 236 of the National Housing Act. See 12 U.S.C. § 1715z-1. HUD's Section 8 Program provides rental subsidies for eligible

low income families residing in newly constructed, rehabilitated and existing rental and cooperative apartment projects. The owners of the Beaumont Avenue Apartments had a contract with HUD for Section 8 assistance.

According to Miller, in October of 2003 he organized, and was elected President of, the Beaumont Avenue Tenants Association, Inc. Miller contends that as a result of his activities with the Tenants Association, in March of 2004, a summary ejectment proceeding against him was commenced by Thetford Properties, through its agent Thetford Property Management, in the Alamance County District Court, see Thetford Properties III v. Richard Miller, case number 04 CVD 651. On January 3, 2005, judgment was entered in that case by the Honorable James K. Roberson in favor of the plaintiff, Thetford Properties, and subsequently a Writ of Possession for Real Property was entered by the Clerk of Court for Alamance County, Diane A. Pickett. The Writ commanded the Alamance County Sheriff, Terry Johnson, to remove Miller from the premises located at 1314-B Beaumont Court in Burlington, North Carolina, Plaintiff Miller's address.

Miller filed a Complaint in this Court on November 30, 2005, against numerous parties involved in the summary ejectment proceeding, alleging that he was wrongfully ejected from the Beaumont Avenue Apartments [Doc. #2].

II.

Plaintiff Miller names the Honorable James K. Roberson, Chief District Court Judge, Judicial District 15A, of the State of North Carolina as a defendant in this

3

action.  Miller alleges that Judge Roberson, as the presiding district court judge in the summary ejectment proceeding, violated § 1983 by ruling that Plaintiff had to post rent in arrears and pay a higher rent bond in order to stay execution of judgment.  (Compl. 6.)  Miller also brings claims against Diane A. Pickett as the Clerk of Superior Court for Alamance County, North Carolina.  Miller alleges that Defendant Pickett's issuance of a writ of possession based upon the order of the state district court violated his constitutional rights.  (Compl. 7.)  Finally, Miller names Terry Johnson, the Sheriff of Alamance County, as a defendant based on his execution of the Writ of Possession for the premises on which Miller was living. (Compl. 7.)  These defendants are entitled to dismissal of Plaintiff Miller's claims against them.

A.

Defendants Pickett and Judge Roberson first move for dismissal for defective service of process.  In support, Defendants cite Rule 4(j)(2) of the Federal Rules of Civil Procedure which states:

> Service upon a state . . . or other governmental organization subject to suit shall be effected by delivering a copy of the summons and of the complaint to its chief executive officer or by serving the summons and complaint in the manner prescribed by the law of the state for the service of summons or other like process upon any such defendant.

Fed. R. Civ. P. 4(j)(2).  The state law of North Carolina requires that service be made upon an officer of the State of North Carolina by delivery of process to that officer's designated agent or, in the absence of a designated agent, to the Attorney

4

General of North Carolina. N.C. Gen. Stat. § 1A-1, Rule 4(j)(4). A district court judge as well as a clerk of district court are state judicial officers. <u>See</u> N.C. Gen. Stat. §§ 7A-3, 40.

Plaintiff Miller, however, attempted service on Defendants Judge Roberson and Clerk Pickett by summons directed to them at their respective offices in Graham, North Carolina. He did not attempt to serve any designated process agent of either Judge Roberson or Clerk Pickett.[1] Nor did he attempt to serve the Attorney General of North Carolina. Thus, service of process is properly quashed in this case. <u>Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.</u>, 733 F.2d 1087, 1089 (4th Cir. 1984) (voiding entry of default judgment because there was no valid service of process).

## B.

Even assuming that service of process on Defendants Roberson and Pickett were not defective, Miller's claims are barred by the doctrine of judicial immunity. It is well-established that judges are absolutely immune from civil liability for any actions performed by them in their judicial capacity. <u>Bradley v. Fisher</u>, 80 U.S. 335 (1871); <u>Steinpreis v. Shook</u>, 377 F.2d 282, 283 (4th Cir. 1967) ([T]he

---

[1] It is not clear from Judge Roberson and Clerk Pickett's motion or supporting memorandum whether they had, in fact, designated a process agent. However, if the officer of the state has not appointed a process agent, service on the Attorney General or deputy or assistant attorney general is proper. <u>See</u> N.C. Gen. Stat. § 1A-1, Rule (4)(j)(c). Service directly upon the officer of the state is not provided for anywhere in the statute.

5

appropriate and only remedy for an allegedly erroneous judgment . . . is by appeal from that judgment."). This immunity extends even to circumstances where a judge has acted improperly in exercising judicial authority. See Dean v. Shirer, 547 F.2d 227, 231 (4th Cir. 1976) ("[T]he law has been settled for centuries that a judge may not be attacked for exercising his judicial authority, even if done improperly."); McCray v. State of Md., 456 F.2d 1, 3 (4th Cir. 1972) ("The absolute immunity from suit for alleged deprivation of rights enjoyed by judges is matchless in its protection of judicial power. It shields judges even against allegations of malice or corruption.") (citing Pierson v. Ray, 386 U.S. 547, 554-55, 87 S. Ct. 1213 (1967)). This immunity is overcome only when the judge's actions are not taken in his or her judicial capacity or when they are made in the complete absence of all jurisdiction. Forrester v. White, 484 U.S. 219, 108 S. Ct. 538 (1988); Dean, 547 F.2d at 230.

In the instant case, jurisdiction over ejectment proceedings is vested in the district court and therefore Judge Roberson. N.C. Gen. Stat. § 42-60. The only action by Judge Roberson alleged in the Complaint is that he entered a judgment against Miller in the summary ejectment proceeding. Thus, there is no question that Judge Roberson's exercise of jurisdiction in this proceeding was a judicial act. Because there are no facts alleged that would remove this case from the established rule of judicial immunity, Plaintiff Miller's claims against Judge Roberson – in both his individual and official capacities – will be dismissed. See

6

Steinpreis, 377 F.2d at 283 (dismissing claims against defendant judges for any actions performed by them in their judicial capacity).

Similarly, clerks of court may be accorded derivative absolute judicial immunity when their actions are taken in obedience to a judicial order or under the court's direction. McCray, 456 F.2d at 5, 5 n.11 ("Since judges are immune from suit for their decisions, it would be manifestly unfair to hold liable the ministerial officers who merely carry out that judicial will."); see also Williams v. Wood, 612 F.2d 982, 985 (5th Cir. 1980) ("The rationale is that, in this limited group of functions, the clerk of court acts as the arm of the of the judge and comes within his absolute immunity."). Plaintiff Miller's allegations against Clerk Pickett concern her submission of the Writ of Possession to the sheriff in accordance with the order of Judge Roberson. (Compl. 7.) Because this action was taken at the direction of a valid judicial order, she is entitled to derivative absolute immunity and the claims against Clerk Pickett – in both her individual and official capacities – will also be dismissed.

Finally, Miller's allegations against Defendant Terry Johnson, in both his official and individual capacities, should also be dismissed. Plaintiff Miller brings his claims against Sheriff Johnson based solely upon Johnson's execution of the Writ of Possession of Real Property. However, the judicial immunity afforded judges is extended to officers of the peace who act upon the basis of a judicial order which is valid on its face. Fowler v. Alexander, 340 F. Supp. 168, 171

7

(M.D.N.C. 1972) ("Confinement by an officer of the peace, acting upon the basis of a judicial order, good on its face, executed in good faith, concerning which the officer has no cause to believe to be contrary to the Constitution of the United States or the laws of North Carolina, is not and must not be grounds for an action . . . under the provisions of 42 U.S.C. §§ 1983."), aff'd, 478 F.2d 694, 696 (4th Cir. 1973); see also Steinpreis, 377 F.2d at 282 (holding that a county sheriff, who was carrying out the routine functions of his office in accordance with a mandatory duty was not subject to suit for his actions); Williams, 612 F.2d at 985 (holding that a sheriff was entitled to absolute immunity when he was complying with a facially valid court order because it is not his duty to "act as an appellate court evaluating the legality of a decisions issued by a judge trained in the law and authorized to issue such orders"); Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980) ("Like the court clerk . . . [the sheriff] is protected from suit by the immunity of the judges under whose orders he acted.")

Here, the Writ of Possession for Real Property was issued by the Clerk of Court for Alamance County on December 8, 2005.  See Thetford Properties III v. Richard Miller, case number 04 CVD 651.  That writ directed Sheriff Johnson as follows: "A judgment in favor of the plaintiff was rendered in this case for the possession of the real property described below; and you are commanded to remove the defendant(s) from, and put the plaintiff in possession of[,] those premises."  (Def's Mot. to Dismiss, Ex. A.)  The location of the premises described

8

in the Writ was 1314-B Beaumont Court, Burlington, North Carolina; the same address as that listed by Plaintiff Miller in his Complaint in this case. Under North Carolina law, Sheriff Johnson is required to execute writs. N.C. Gen. Stat. § 162-14 ("Every sheriff, by himself or his lawful deputies, shall execute and make due return of all writs and other process to him legally issued and directed, within his county or upon any river, bay or creek adjoining thereto, or in any other place where he may lawfully execute the same."); see also Steinpreis, 377 F.2d at 283-84 (upholding dismissal where county sheriff was carrying out routine and mandatory functions of his office). Because Sheriff Johnson was executing an order of the court consistent with his official duties, he is afforded absolute immunity and Plaintiff Miller's claims against him in both his official and individual capacities will be dismissed.

III.

Defendant HUD has also filed a Motion to Dismiss or in the alternative, Motion for Summary Judgment in this case. HUD's involvement in this case presumably stems from the fact that the owners of the Beaumont Avenue Apartments participated in a program that involved HUD in subsidizing their mortgage pursuant to Section 236 of the National Housing Act.[2] See 12 U.S.C. § 1715z-1.

---

[2] The new owners of Beaumont Avenue Apartments are not currently participating in this same program, however, the former owners participated at all times relevant to this action.

9

HUD first moves for dismissal of Miller's claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Specifically, HUD contends that Plaintiff Miller has not shown that the United States has waived its sovereign immunity from suit.

A claim against HUD is viewed as a claim against the United States. See Portsmounth Redev. & Hous. Auth. v. Pierce, 706 F.2d 471, 473-74 (4th Cir. 1983) (holding a suit against the federal agency, HUD, affects the public treasury and is therefore a suit again the United States), cert. denied, 464 U.S. 960 (1983). The United States, as the sovereign, is immune from suit unless it has consented to be sued, through an explicit waiver from Congress. United States v. Sherwood, 312 U.S. 584, 586, 61 S. Ct. 767 (1941); Welch v. United States, 409 F.3d 646, 650 (4th Cir. 2005). Additionally, "[a]ll waivers of sovereign immunity must be 'strictly construed . . . in favor of the sovereign.'" Welch, 409 F.3d at 650-51 (citing Lane v. Pena, 518 U.S. 187, 192, 116 S. Ct. 2092 (1996)). Thus, the burden of establishing an unequivocal waiver of sovereign immunity is on the Plaintiff. Welch, 409 F.3d at 651. HUD contends that Plaintiff Miller has failed to establish the Court's jurisdiction under the three federal statutes cited in the Complaint: 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. § 1983. (Compl. 2.)

Sections 1331 and 1332 of Title 28 of the United States Code contain only a general grant of federal jurisdiction over matters of federal law and matters

involving diversity of citizenship.  However neither of these statutes establishes an unequivocal waiver of the United States' sovereign immunity.  See Research Triangle Inst. v. Bd. of Governors of the Fed. Reserve, 962 F. Supp 61, 64 (M.D.N.C. 1997) ("The federal question jurisdictional statute is not a general waiver of sovereign immunity; it merely establishes a subject matter that is within the competence of federal courts to entertain.") (citing Whittle v. United States, 7 F.3d 1259, 1262 (6th Cir. 1993)); Nishibayashi v. England, 360 F. Supp. 2d 1095, 1101 (D. Haw. 2005) ("[B]ecause section 1332 is not in itself a waiver of sovereign immunity, Plaintiff must demonstrate that the claim being asserted is covered by a specific statutory authorization to sue the United States."); Dawkins v. U.S. Drug Enforcement Admin., 1998 WL 152937, at *1 (6th Cir. March 23, 1998) (upholding district court's determination that sovereign immunity was not waived by the diversity jurisdiction that arises under § 1332).

Miller's claim against HUD pursuant to § 1983 is also insufficient to establish a waiver of sovereign immunity.  Section 1983 creates a cause of action against "every person who under color of the law of any state . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983.  However, Miller's claim is against HUD, a federal agency, operating under 0color of federal law, not state law, and therefore § 1983 does not apply.  See Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1987) ("There is no valid

11

basis for a claim under section 1983, in that [Plaintiff's] allegations are against federal officials acting under color of federal law. Section 1983 provides a remedy only for deprivation of constitutional rights by a person acting under color of law of any state or territory or the District of Columbia."); Walber v. U.S. Dept. of Housing & Urban Dev., 1990 WL 19665, at *2 (6th Cir. March 5, 1990) ("Section 1983 fails for the simple reason that it imposes liability only on a person acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia . . . HUD, of course, is a federal agency, operating under color of federal rather than state law; section 1983 is hence unavailable on these facts.").[3]

Because Miller has not met his burden of establishing that subject matter jurisdiction is present, his claims against HUD will be dismissed without a determination on the merits.[4] See Welch, 409 F.3d at 651 ("If the plaintiff fails to

_____

[3] Although Plaintiff Miller does not cite to §§ 1981 or 1982 in his Complaint, any claims under these statutes would also be barred by the doctrine of sovereign immunity because the United States has not consented to suit under the civil rights statutes. See Unimex, Inc. v. U.S. Dept. of Housing & Urban Dev., 594 F.2d 1060, 1061 (5th Cir. 1979) ("The direct claims against HUD are barred by sovereign immunity because the United States has not consented to suit under the civil rights acts."). Additionally, although sovereign immunity has been waived for actions arising under § 1702 of the National Housing Act, Plaintiff Miller asserts nothing in this Complaint that would constitute a violation of that Act. Id. (citing FHA, Region No. 4 v. Burr, 309 U.S. 242, 244-46, 60 S. Ct. 488 (1940)).

[4] Defendant HUD also moves for dismissal or in the alternative, summary judgment for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b) & 56. However, because subject matter jurisdiction is not present, these motions will not be reached.

meet this burden, then the claim must be dismissed.")

IV.

Defendant Tammy Eggleston also has filed a Motion to Dismiss pursuant to Rule 12(b)(1), Rule 12(b)(5), and Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, on May 15, 2006 the Clerk of this Court entered an entry of default against Defendant Eggleston which she has moved to set aside. Thus, prior to any determination of the merits of Plaintiff Miller's claims against Defendant Eggleston, her motion to set aside must be addressed.

A.

On January 2, 2006, a Request for Default Judgment against Tammy Eggleston was filed by Plaintiff Miller [Doc. #17]. An Entry of Default for failure to plead or otherwise defend was entered by the Clerk of Court on May 16, 2006 [Doc. #37] and notice was sent to Defendant Eggleston. On May 30, 2006, Defendant Eggleston, through her attorney, filed a Motion to Set Aside Entry of Default pursuant to Rule 55(c) of the Federal Rules of Civil Procedure [Doc. #38]. In her motion to set aside the default, Eggleston contends that prior to her receipt of the Clerk's entry of default, she "had not been put on notice, served, or otherwise notified of any complaint, allegations, or otherwise noticed as to her being named a Defendant in [this] case." (Def.'s Mot. ¶1.) Eggleston has also submitted an affidavit in which she asserts that she was never personally served in this action. Although she remembers having a visitor to her home who told her

13

they were there on behalf of Mr. Miller, she told them that she was no longer employed by the apartments where he was a former tenant and, without opening the door, she returned to her bed because she was ill. Eggleston states that she "was not given any paperwork, nor was [she] informed of the nature of the caller's business." (Eggleston Aff. ¶ 6.)

Plaintiff Miller, however, contends that Eggleston was served in compliance with Rule 4 of the Federal Rules of Civil Procedure when Mary McGhee, who is not a party to this suit, left the Complaint and Summons on the front door handle of Eggleston's residence. (McGee Aff., Pl's Resp. to Mot. to Set Aside, Ex. 6.) Ms. McGee also states that Defendant "attempted to evade service by saying 'that I had the wrong address, and that only the Sheriff could serve as [sic] summons." (Id.)

An entry of default may be set aside "for good cause shown." Fed. R. Civ. P. 55(c). Setting aside an entry of default pursuant to Rule 55(c) is a matter which lies largely within the discretion of the trial judge, however, Rule 55(c) is to be liberally construed to provide relief from the consequences of default. See United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982); Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969). In determining whether there is "good cause" to set aside an entry of default, the court should consider several factors including: (1) the promptness of action of the party in seeking to set aside the entry of default; (2) whether the defaulting party presents meritorious defenses; (3) whether the

14

party will be substantially prejudiced if the default is not set aside; (4) the personal responsibility of the party; (5) the willfulness of the default; and (6) the availability of less drastic sanctions. See Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987); Moradi, 637 F.2d at 725; In re Frisby Tech., Inc., 2003 WL 22127904, at *2 (M.D.N.C. Sept. 15, 2003). However, the disposition of claims on their merits is highly encouraged, Moradi, 673 F.2d at 727, and "[a]ny doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." Tolson, 411 F.2d at 130.

Here, there is disputed evidence as to whether Defendant Eggleston ever received the Complaint and Summons. McGee contends it was left on her door and Eggleston asserts that she received nothing. However, immediately after Eggleston received the Entry of Default from the Court on May 17th, she sought legal counsel who subsequently filed the motion to set aside the default within two weeks of its being entered. Such promptness weighs strongly in favor of setting aside the entry of default. See Moradi, 637 F.2d at 727 ("Traditionally, we have held that relief from a judgment of default should be granted where the defaulting party acts with reasonable diligence in seeking to set aside the default and tenders a meritorious defense.") (citing Central Operating Co. v. Utility Workers of Am., 491 F.2d 245, 254 (4th Cir. 1974)).

Additionally, an entry of default in this case will severely prejudice Eggleston. In his Complaint, Miller requests relief in the amount of one million

15

dollars against Defendant Eggleston.  See Lolatchy, 816 F.2d at 954 (Rule 55(c) must be "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments") (citations omitted).  However, in her motion to set aside the default as well as her contemporaneously filed motion to dismiss, Eggleston lists several different defenses to Miller's claims; including lack of subject matter jurisdiction as well as failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Moradi, 637 F.2d at 727 (holding that relief from an entry of default should generally be granted when the defaulting party tenders a meritorious defense and discussing the concern of relieving the judicial system from frivolous and unnecessary proceedings).

For the foregoing reasons, the entry of default against Defendant Eggleston will be set aside.  See Moradi, 673 F.2d 725 ("[T]he clear policy of the rules is to encourage dispositions of claims on their merits.").

## B.

Defendant Eggleston has also filed a Motion to Dismiss Plaintiff Miller's claims for lack of subject matter jurisdiction, insufficiency of service of process, and failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(1), 12(b)(5) & 12(b)(6).  In his Complaint, Miller makes only two allegations against Eggleston; (1) that she was "unprofessional" towards Plaintiff and (2) that she filed a complaint for summary ejectment in state court which indicated Miller's

16

contract rent was $584.00 per month, when Plaintiff had been paying $178.00 per month. Neither of these claims is sufficient, if taken as true, to survive a motion to dismiss. See Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999) (holding a Rule 12(b)(6) motion should be granted only if, after accepting all well- pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of her claims that entitles her to relief).

First, Miller has cited to absolutely no authority that supports federal question jurisdiction in a case where an apartment manager's conduct is "unprofessional" or where the manager may have made untruthful assertions in a state court proceeding. In addition, the allegations of residency in the Complaint establish that there is no diversity jurisdiction as to Ms. Eggleston.

Second, even if there were federal question or diversity jurisdiction, this Court would still lack subject matter jurisdiction. Under the *Rooker/Feldman* abstention doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court . . ." Johnson v. De Grandy, 512 U.S. 997, 1005-6, 114 S. Ct. 2647 (1994) (citations omitted). This bar against district court review of state court decisions applies not only to issues actually presented to and decided upon by the state court, but also to any issues or claims that are "inextricably intertwined" with those questions ruled on by the state court. Plyler v. Moore,

17

129 F.3d 728, 731 (4th Cir. 1997), cert. denied, 524 U.S. 945, 118 S. Ct. 2359 (1998). The *Rooker/Feldman* doctrine is jurisdictional in nature because district courts are to exercise only original jurisdiction while appellate jurisdiction is reserved for the Supreme Court of the United States. See American Reliable Ins. Co. v. Stillwell, 336 F.3d 311, 316 (4th Cir. 2003). Thus, if Miller disagrees with something stated in Eggleston's state court complaint or the state court's determination of that claim, it is the North Carolina Court of Appeals, not this court, to whom he must appeal for relief.

Because Miller has failed to state a claim against Defendant Eggleston over which this Court has jurisdiction, Eggleston's Motion to Dismiss will be GRANTED in its entirety.

V.

Plaintiff Miller has also filed several motions in this case, including (1) a Motion for Preliminary Injunction [Doc. #5] and (2) a Motion for the Defendant to Bear Costs for the Service of Summons [Doc. #20]. Each motion will be addressed in turn below.

A.

In his Motion for Preliminary Injunction, Miller seeks review of the summary ejectment proceedings that took place in the District Court of Alamance County. However, as stated above, Congress has vested federal authority to review state court judgments only in the Supreme Court of the United States. American

Reliable, 336 F.3d at 316; see also Plyler v. Moore, 129 F.3d at 731 ("Under the *Rooker/Feldman* doctrine, lower federal courts do not have jurisdiction to review state-court decisions.")  Federal district courts, such a this, exercise only original jurisdiction.  American Reliable, 336 F.3d at 316.  Miller's remedy if he disagrees with the state court's decision is an appeal to the North Carolina Court of Appeals, which, according to his Complaint, (see Compl. 5), he has already undertaken.  Id. ("[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court.").  Because his Motion for Preliminary Injunction relates solely to the errors he contends took place in the ejectment proceeding, it will be DENIED for lack of subject matter jurisdiction.

B.

In his Motion for the Defendant to Bear costs for the Service of Summons, Plaintiff Miller requests this Court to direct several of the Defendants to pay the cost of service of the summons upon them by the United States Marshal's Service. Miller requests this order as to the following Defendants:  Mr. David Falk, Thetford Properties III, Thetford Property Management, Attorney William Brownlee, and Mr. Richard A. Urban.  The crux of Miller's claim is that he submitted a standard "Waiver of Service of Summons" form to these Defendants and that these Defendants failed to return the waiver of service within the 30 days stated in the waiver form.  Because Plaintiff Miller is proceeding *in forma pauperis*, he contends

19

he does not have the means to pay the costs associated with serving these summons directly upon the Defendants and therefore requests an order requiring the Defendants to bear these costs.

Rule 4(d) provides "If a defendant located within the United States fails to comply with a request for waiver made by a plaintiff located within the United States, the court shall impose the costs subsequently incurred in effecting service on the defendant unless good cause for the failure be shown." Fed. R. Civ. P. 4(d)(2)(G). In this case, however, Miller is requesting the Court order payment of costs prior to the issuance of the summons. Because the Court does not have personal jurisdiction over these Defendants until they are properly served, such an order is premature. <u>See</u> <u>Stafford v. Briggs</u>, 444 U.S. 527, 553 n.5, 100 S. Ct. 774 (1980) ("[A]s a general rule, service of process is the means by which a court obtains personal jurisdiction over a defendant . . .") Thus, Miller must properly serve the Defendants before he can request an order for costs be entered by this court.[5] For this reason, Miller's Motion for Defendants to Bear Costs of Service of Summons will be DENIED.

VI.

For the foregoing reasons: (1) Plaintiff's Motion for Preliminary Injunction

---

[5] Miller also contends that his *in forma pauperis* status supports the imposition of the costs of service of the summons against the Defendants. However, other means, such as the form USM-285 which is available from the Clerk of Court, may be utilized by Plaintiff Miller to relieve himself of the financial burden of service at this time.

[Doc. #5] will be DENIED; (2) Defendant Terry Johnson's Motion to Dismiss [Doc #14] will be GRANTED; (3) Plaintiff's Motion for Defendant to Bear Cost for the Service of Summons [Doc. #20] will be DENIED; (4) Defendants Judge Roberson and Clerk of Court Pickett's Motion to Dismiss [Doc. #22] will be GRANTED; (5) Defendant HUD's Motion to Dismiss [Doc. #26] will be GRANTED; (6) Defendant Eggleston's Motion to Set Aside Default Judgment [Doc. #38] will be GRANTED; and (7) Defendant Eggleston's Amended Motion to Dismiss [Doc. #43] will be GRANTED.

This the day of August 29, 2006

    /s/ N. Carlton Tilley, Jr.
United States District Judge